Third argument of the morning, Evans v. Wills, it's Appeal 21-1704. Mr. Duffy, good morning. Good morning, Your Honors. May it please the Court, Brendan Duffy on behalf of Appellant James Evans. Your Honors, this case is exactly what the inordinate and unjustified delay doctrine is for. Nearly two decades ago, Mr. Evans filed petitions for post-conviction relief in Illinois State Court, asserting serious claims of actual innocence and prosecutorial misconduct. Over the next 17 years, the state court process absolutely failed him. Under this court's precedence, a delay of less than two years can be sufficient to excuse exhaustion, and this court has called a delay of four years extreme. Mr. Evans's case involved a 17-year delay that was largely caused by the state. The district court's decision, concluding that only seven months was attributable to Mr. Evans, is clearly wrong, and, in fact, the state does not even attempt to defend it on appeal. And your view is that this district court decision was based only on an inspection of the state document, right? Yes, and those initial filings that Mr. Evans included in his petition, Your Honor, yes. Can you tell me about those filings? Those filings, that included some of the state court filings, but not, we don't have access to all of them, only some of the filings that he attached to his initial petition. I see. Yes, and finally, Your Honors, given the sparse and inconsistent docket sheets, as Your Honor, Judge Ripple mentioned, we think, at a minimum, this case requires a remand for a hearing on whether the delay is justifiable. Mr. Duffy, what's the status of the proceedings before the state court now? Your Honor, so first, I would say that it's our position that that doesn't matter under cases like Verndon-Varner. I understand. Yeah. I understand. But, secondly, it's not altogether clear. As the state court pointed out, that it appears that some sort of discovery has been turned over to Mr. Evans. It's unclear what exactly that discovery is and whether it's all of the discovery. Has there been any hearing in the state court since the filing of the briefs here? There is a hearing scheduled for, I believe, the 21st, although the state can correct me if I'm wrong. So, coming up in about, I believe, next week. Do you know if that's a status hearing or is that a hearing on the merits of his— That is a status hearing. There is no—to my understanding, there is not, at this point, a scheduled third-stage evidentiary hearing. How relevant is it that there be some state activity at this point? I mean, it seems to me that just makes this whole thing pointless if the state can, once they're called on an unconscionable delay, do something to stir the pot and not necessarily move the ball along very much. That really makes this whole thing kind of beside the point. Your Honor, so I'd say two things. On the law, I would say this court was clear in cases like Verndon and Varner that exhaustion of remedies is determined at the time the petition is filed, which I think makes sense for a lot of practical reasons, because you don't want a case like we have here, two decades of inordinate, excessive, and really unprecedented delay, and then all of a sudden the state court kicks the process going. This court has repeatedly looked to the course of the state court proceedings to assess whether there has been an inordinate and unjustified delay. In other words, Your Honor, it's past its prologue. That's exactly what this court has consistently looked to as the best evidence to whether there is an effective state court process. Mr. Duffy? I'm sorry. No, go ahead. Please. Please. Go ahead. Do you believe that the state court itself, as opposed to any of the parties, is responsible for part of the delay here? I do, Your Honor. Yes. I think there are several independently sufficient delays here. I think, I mean, we could just start with, even assuming their brief, I think we have five and a half years, which clearly meets the standard. I think there's, they admit on page 42 of their brief that they didn't turn over certain discovery from 2008 until 2012, and then additionally didn't respond to several years' worth of delays. That adds up to five and a half years. Again, this court in Carter said four years extreme. The Third Circuit in Burkett said five and a half years was enough to excuse exhaustion as a matter of law. So we think we have that. We think we have the discovery delays. And then the third element of delays, which we think adds up to at least eight years, is the state court's failure and inattention, giving inattention to Mr. Evans' case. We think this clearly falls under this court's decision in Carter. This court in Carter said that certain filings should have rung alarm bells with the state court. This court in Carter also said at one point, there seems to be no administrative procedure, seems to be in place to detect and end the severe stagnation. We think a lot of what happened with the state court in ignoring certain filings, not scheduling hearings, not responding to filings, all falls under that logic in Carter and should be attributable to the state. Is there, in Illinois, is there a state policy or is there a policy in this court about appointment of counsel in a collateral attack in a case like this? There is, Your Honor. So there is a structure in place that provides post-conviction counsel at the second stage of the Illinois post-conviction process. There is? Yes. I see. So the expectation on the part of the petitioner as well as the judge would have been the counsel would have been appointed. I think that's correct, Your Honor. I see. Where is this venue? What part of the state is this? In Southern District, Your Honor. And Mr. Evans is in Menard Correctional Facility. I see. Yes. So in just talking about, I mentioned the delays that we think are uncontested in this case that add up to five and a half years, but I think really the smoking gun here is the discovery issue. So in 2008, the state court ordered the state to turn over certain relevant discovery materials. Over the next four years, the state ignored four different discovery orders, repeatedly ordering them to turn over. And what we're talking about are these audio tapes. We're talking about the Rounds audio tapes, Your Honors. Yes. Anything else? Yes. There are certain other discovery materials that Mr. Evans has requested. And as we're talking right now, I'm just going back to the point you made before about some discovery you understand has been produced, but maybe not all. That's correct, Your Honor. So what do you know, just to get specific about it, has Mr. Evans received all the audio tapes that he's asked for? No. So I think it's very clear from the records. As late as 2000, just in the state court process, in 2006, 16, and 2017, you can see very clearly on page 178 and 79 of the appendix that he filed motions to obtain those same audio tapes that he never received, even though the district court held a hearing in 2012, absolving him of that previous four-year delay and saying the state hadn't been clear on who had what tapes. The state thereafter did attempt to apparently... In the clerk's office, they looked in one file, but not another file. Yes. And they gave it to the guard. And then the guard was confiscated. But thereafter, directly thereafter, Mr. Evans repeatedly made filings saying, please, please turn over these tapes to me. And over the next five years, he did not receive them, as I said, 2016 and 2017. And then when he filed his federal petition, very clear on page 840 of the appendix that he still did not have those relevant audio tapes. Additionally, Your Honor, actually, Your Honor, if there are no other questions, I'll save the remainder of my time for rebuttal. Okay. Very well, Mr. Duffy. We'll hear from Mr. Schneider. Thank you, Your Honor. May it please the Court, Counsel, and Assistant Attorney General Josh Schneider on behalf of the respondent. I want to start with the posture of the state court proceedings, because I think it's really important to turn to Judge Ripple's question about sort of whose job is it to move the ball. Illinois post-conviction review follows a sort of analogous three-step process to federal habeas review. The first step is a preliminary screening by the court to weed out petitions that are patently without merit or frivolous. If a petition survives that first stage screening, it proceeds to the second stage, where counsel is appointed if necessary, and then counsel amends the pleading as necessary to adequately present the petitioner's claims. So, once counsel is appointed, the ball is in the petitioner's court to finalize the claims that he wants the trial court to review. Counsel was appointed in 2003. There was difficulty finding counsel who did not have a conflict due to representing a prior witness in the trials. But since 2014, petitioner has been represented by retained counsel of choice and still has not filed the amended petition that would indicate to the trial court these are the claims. But isn't that because he hasn't gotten the discovery yet? It's hard for him to file an amended petition where part of the argument is the round's audio tapes were tampered with and didn't disclose the entire conversation if he doesn't have those tapes. No, that isn't the problem. That's what the state court, I think it was 2012, in one of the few transcripts we have indicated. So what the state court said is the purpose for this, it was reminding the petitioner, the purpose of this discovery is just so you can finalize the presentation of your claims. If you know what your claims are, just file your amended petition and then we can look at it. Because in the post-conviction second stage context, we take the allegations as true. And he can either supply supporting documentation or simply explain why that documentation is not available to him at that time. That's sufficient. So here... Mr. Schneider, I'm very troubled, given that we don't have a ton of time, I'm very troubled with some of the district court's findings. Let me start with the easiest one. The district court found that the state tendered the request of discovery in two months. How on earth could the court have found that, given what we do know, that Mr. Evans first filed the discovery motion in April of 2005. In December of 2008, the state court issued an order requiring the state to produce the tapes. In July, June and July of 2009 and 2010, the court ordered, turn these tapes over, you still haven't yet. In September of 2010, the state court noted Evans was still waiting for the materials. I could go on. So here's why I don't think it's... How could that not be clearly erroneous? Sure. So the district court, I was looking at the records before, and the records before it show that in December 2008, the state court orders production of the tapes. Everything before 2008 is irrelevant because he's not entitled to discovery at the first or second stage, as the state court makes clear. Okay, so take December of 2008 as a starting point. In March of 2012, the state court says you still don't have these and it's not your fault. Right. Two months and they were... I don't understand. So in 2008, the court orders the state to produce tapes. In February 2009, the docket shows that they're now awaiting additional discovery materials, which at least supports inference that there are additional materials. Then it becomes clear in... How can you justify and try to support the statement that the state tendered the requested discovery in two months and there's no discussion of this year-long delay, years and years? Well, our reading of the record is that there were different batches of discovery. Defendant went from asking for what the state had to asking for things that the state didn't have. There's some confusion about what exact materials he wanted. But setting that aside, let's say that all of that delay is attributable to the state for not turning over these materials. Let's say that they didn't turn them over. We know, though, that some of the trial exhibits were not in the state's attorney's office. They were in the clerk's office. It's important to remember that these are trial exhibits from a trial in 1999. So at this point, it's over a decade old. But in September 2013, Petitioner's retained counsel is granted leave to review those original records, those original tapes. In 2015, Attorney Zhao appears in a change of retained counsel and moves to compel review of those same tapes. So we're now seven years after the tapes were originally requested. And it does not appear that counsel went to the clerk's office to review them. Or if they did, did not communicate to Zhao when Zhao came on board. It's your burden here to prove that the delay was justified. The law is pretty clear on that. It is. I would submit, though, that it's our burden to prove that an inordinate and unjustifiable delay did not render the process ineffective to represent his rights or to protect his rights. And part of that is proving that the delay was justified. Well, this gets us to the question of what is the span that's relevant to whether a state corrective process is sufficient to protect a petitioner's rights? Is it only the past? Is it the past and the present? For example, if there had been an evidentiary hearing, if there's an evidentiary hearing tomorrow, is that irrelevant to whether the state corrective process? Before the state or before the district? Before the state. And if the state court were to hold the evidentiary hearing tomorrow, would that be irrelevant to whether the state corrective process is effective to protect his rights? Here we're in the second stage. Since 2014, in 2014, the state's attorney moved to dismiss the petition. The state court denied that motion and then has repeatedly been trying to move things to a third stage hearing since then. It had been actually set for a third stage hearing on the agreement of the parties in 2020. Mr. Stein, let me ask this question. Let's suppose that this kind of confusion about the Illinois three-step, Mr. Evans is clearly confused about it. I'll grant you that. And let's suppose that we have a record here that's not 17 years long, but let's say it's 34 years long. Let's just double it. Okay? And so the docket's twice the number of pages and it shows this confusion and back and forth and everything that's gone on here. At what point does this process just become ineffective because of the passage of time? So, if it was, again, because we're in the second stage. At some point, this is a case that's sitting on a state court docket. Right. Right? And at some point you would say, look, what's going on here? Why do we have an 03 case on the docket? And the docket actually does show some of the state court's dissatisfaction with the pace things are moving at. And I would direct the court specifically to September 2017 when the third stage evidence was handed. Do you think you'd be standing here if it was a 34-year delay? So, I suspect at some point the state court would have run out of patience. The problem, this is really the problem. The problem is in September 2017, a couple years before the federal habeas petition was filed, the third stage hearing was continued and the petitioner's retained counsel of choice was told, you file a proposed order and then we'll schedule it. And then she did nothing for two and a half years. The state's attorney in 2020 then comes forward and says, let's set this for the third stage hearing. And it's set with the agreement of the parties for a third stage hearing on petitioner's for March 2021, but petitioner then asked to continue it. So, really the problem is with petitioner's theory attributing all of these delays that his retained counsel agreed to or requested is what he's saying is that unless a state court compels him to proceed against his wishes on a petition that his counsel has said they are not ready to proceed on, that the state corrective process is ineffective, which means there's some kind of limit on the petition. But he's saying they're not ready to proceed because the state hasn't turned over the discovery yet. That's not what the state court records show. The state court records show that as recently as November 22, or November 2022, I'm sorry, counsel was asking time for his expert to review the exhibits, the exhibits that counsel or previous retained counsel had been granted leave to review in the clerk's office in 2013. I know that petitioner's pro se pleading say he has not gotten these documents. There's been nothing counseled since attorney Zhao's request for the trial exhibits, which were actually in the trial. You think there's a point in time as a legal matter where a state, where our role absolutely is not to supervise state court processes. All we're doing is interpreting a statute here, right? But at some point in time, don't you think just the passage of time gets ineffective? It shows that this is ineffective? I just think, I don't understand the limiting point of this. I mean, 17 years is troubling. If we get to 34 years, if we get to 50 years. And we're now at 20. And so, I think, if I may answer briefly. Yeah, please. I absolutely agree that if petitioner said, I'm ready to proceed, and the state court did nothing, that would be a problem. Even if the petitioner is hopelessly confused. He has no, he does not, he's not trained as a lawyer. He doesn't understand. He doesn't trust lawyers. He's changing lawyers. He's got a whole theory in his head about tapes and all this. What difference does it make? So, if you're represented by counsel, and your representative to the court keeps telling the court, we're not ready to proceed. It ultimately becomes a question of, at what point does the court's refusal to bulldoze counsel and say, we're proceeding whether you're ready or not. Does that render the state corrective process ineffective? He is free to discharge counsel that he's chosen to retain, or retain other counsel. But if the problem is that the state court is not compelling him to proceed against his request, I would say there's no point where the state court is compelled to otherwise the state corrective process. One final question, at least for me. Do you believe, as you stand here today, that your client is 100% in compliance with producing tapes? I want to be clear. Our office has no actual involvement with the litigation in the state court. We just represent the warden. So, my access to what's been happening in the state court is fairly limited. I've been checking the dockets. From my review of the materials and the fact that current counsel most recently, if you look at the docket entry from November 2022, which is one of the more fully descriptive docket entries, counsel says, we need additional time to retain an expert to review these trial exhibits. So, my read on that is that that means that they've got the exhibits and they now want an expert to review them. If counsel, if petitioner is allowed to opt out of or to begin federal litigation of those same claims, then we will have exactly what the exhaustion requirement is intended to prevent, which is simultaneous parallel litigation of the same claims, looking at the same evidence in federal and state court. So, for those reasons, we ask that the court affirm. Okay. Thank you, Mr. Schneider. Mr. Duffy? A few points, Your Honors. So, first, as to Judge Cutter, as to your point about at some point, does the passage of time just automatically excuse exhaustion? The Third Circuit has held that in multiple cases. On Burkett, five and a half years in, I believe, Stickman said it's difficult to envision any amount of progress ever justifying an eight-year delay. So, I think this court would be squarely within the other courts of appeals in following those cases. I think another point here that's important to remember is there's an asymmetry in this case that I think really supports Mr. Evans. First, as counsel conceded, the burden is on the state to establish that over the course of this 17-year delay that they have come forth with a justification. And, two, this court has held that as little as 17 months can be sufficient to excuse exhaustion. So, in other words, counsel has to come forth, the state has to come forth and demonstrate that all but a few years are justifiable. And, as the state has conceded, there's at least five and a half years that they have failed to provide any justification for. So, we think that alone is enough to reverse this case for hearing on the merits below. Additionally, a couple questions that you had for state counsel. One, Mr. Evans had sought the tapes as early as 2005. He sought with the state in 2005. The order did not come out, it's correct, until 2008. And then the court did say in 2012 that none of those four years was his fault. The other point that there was some discussion of is this third stage evidentiary hearing. Mr. Evans did not want to proceed, it appears from the record, because he didn't have the tapes that were the crux of his case. He couldn't move to a third stage evidentiary hearing, the main part. Am I correct, Mr. Duffy? All you're asking is that we require the district court to sort all this out. It seems to me we're having the, trying to have the discussion here that you maintain the district court should have had. Is that right? Your Honor, so I think there's, you know, we have, I think there's two ways to resolve this case. One is a remand for a hearing on whether the delay is justifiable. But we think that is a second, the second best option because of what I mentioned earlier, the asymmetry in this case, because the state has the burden and they have to prove all but 17 months essentially was justifiable. And we think there is clearly enough in the record to reverse on that basis so that Mr. Evans can have a hearing on the merits of his underlying petition. The other thing I would point out, Your Honor, is that the state has not pointed to one case in this court or any other that there has ever been a delay of this long that has not had exhaustion excused. And Mr. Evans has repeatedly pleaded with the court to adjudicate his case. This is exactly what the inordinate and unjustified delay doctrine is for. If there are no other questions, Your Honor, we would ask for this court to reverse and remand for a hearing on the merits. Okay. Very well. Mr. Duffy, thank you. Thank you for accepting the court appointment. Thank you to your firm as well, Mr. Schneider. Thanks to the state. We appreciate submissions. And we'll move to our next.